Our next case this morning is 2012-3188, Paul Schilleci v. OPM. Jelacy. I'm sorry, Jelacy? That's correct. And you are Mr. Guesthouse? That's correct. May I please have a look? I'd like to start by referring to the guidelines that were attached to the government's brief. In particular, on page two it says, It must be remembered these guidelines are generally not hard and fast rules that are to be applied mechanically or mindlessly. So page two of red or of the appendix? Page two of the guidelines, that's Roman numeral two, and that is the addendum to their brief. Do you have the appendix number? It is under use of guidelines. And that is not appendix, that was the addendum. Okay, so that's at the end of red. There's the excerpts from policy guidelines? Yes, that's correct. Okay, and then they're telling us about... On page two, use of guidelines. Yeah, okay, I have that. They're not hard and fast rules that are to be applied mechanically or mindlessly in all cases. Each overpayment case is unique with its own set of circumstances and equities. Reason and common sense should prevail over any particular guideline. And so what's our standard of review for whether or not the OPM applied reasonableness and common sense and not mindlessness? Is that what your argument is, is that they didn't apply this? That is my argument. And there was no discussion of that in either the administrative judge's opinion or the OPM opinion. What they did, in fact, was take the specific standards without reference to the particular circumstances in this case. What exactly are you seeking here on behalf of your client? You make certain assertions about he wouldn't have retired or whatever, that's not on appeal. We've had that and we are seeking that there not be a recovery of the overpayments. You're looking for a waiver. That is correct. The regulations were governed by, if I'm looking at page seven of the red brief, at least, 8470B. So the OPM applied the standard of recovery would be against equity and good conscience, right? That's correct. All right. So you're not claiming financial hardship under one? No. You're claiming under A3, recovery would be unconscionable under the circumstances? That is correct. So what evidence is there in the record that recovery would be unconscionable? The record is essentially, the only testimony, the uncontradicted testimony from the hearing was from Mr. Shalasi and his boss at the Department of Labor, who said that he was advised that he would be getting in excess of $800 an hour. Okay. And you say Ms. Hare confirmed that. Mr. Shalasi is told you'll be getting $800. He buys up his annuity, doesn't he? That's correct. He buys it up from what to what? I'm sorry? It's $324 and he buys it up to $400, right? That was in December of 2010 sometime after. Doesn't he recognize some kind of incongruity in buying it up to $400 when he already knows that it's $800? That was only after some 16 months when he was receiving the $859 per month. Right. But he's buying it up to $400. Why is that? And that's also the same time. A month later. A month later when he was advised that he was... But doesn't he see any incongruity the month before when he buys it up? If he really believes that it's over $800 and he has a firm guarantee, why should he pay the extra money? That is the question. It is a question. Let me answer it this way, Judge. I think one has to put oneself in the position of a government employee who is not sophisticated and is not aware. And frankly, this is... Is he sophisticated enough at least to write down the name of the person who tells him he's going to get $800 a month? Because there's no foundational evidence in the record. He relied upon that. He spoke with his boss about it after getting that information. And in fact, I would argue that OPM apparently got the same advice because it was paying him $859 a month. But why does that matter at the end of the day? How is that sufficient to show that recovery would be unconscionable? In my understanding, I can't put my finger on it now. And the stuff that he got, everybody who gets their first check or whatever gets a notice that this is tentative and we don't know and we can recover if you're overpaid. So he had notice of that. I mean this happens, I guess, unfortunately pretty routinely that somebody gets more money than they should. He's notified up front that this isn't your final thing and we're still doing the calculations. Yes, it's unfortunate. But why is this different than every other case? Are you suggesting every time OPM overpays someone, obviously if somebody is getting more up front, they have a reason to believe that's what they're going to be getting throughout. Sure. Why is that enough to be the standard of the regulation? What I'm saying, Judge, is that this is exceptional because of the amount of the difference. Because the difference here is so much greater. If it were $50 a month, if it were $50 a month less they were getting or even $100. I don't understand how that matters though. I mean, yes, it was a large amount. Does that mean that he shouldn't have to pay it back because it was such a large amount? I mean, I don't understand the way that gets you. I appreciate it. I appreciate the position he was in, but I don't understand where the size of the amount gets you. You're not challenging OPM's more recent calculation, the correctness of that. No. So how does the amount, the difference of the amount, and you're not suggesting that somebody nefariously was overpaying him for some unknown purpose. So where does that get you in terms of the unconscionable? I would say that for, well, frankly, for people, an ordinary human being that would look at this, I think would be shocked by the amount that he has to overpay. How much was it? It was 16 months, right? That's correct. And it was about $400 a month extra? Yes, which is nearly… Nearly $5,000. It was $9,000. It was $9,000. Something over $9,000 was recovered. Let's say we're shocked at the incompetence of the calculations here. Beyond that, why is it… I mean, there is a provision in the regulations that say that if it would cause financial hardship, then that's an argument that could be made for OPM to consider. You're not relying on that. Why is the difference of the amount sufficient to say it would be unconscionable to recover the amount? Well, I think the totality of the circumstances would argue for that, Judge. I think the totality of the circumstances is the substantial amount that is now… He is being asked to pay back, I think, $50 a month, which is… I think it's $80 now. Which is, you know, like a quarter of what his monthly… What's the interest rate he's paying? There's no interest rate. So, in essence, he has an interest-free loan to buy that car. He bought a car. You said he bought a car for $10,000. He did buy a car, which he would not have bought otherwise. I mean, did he go back and say… I mean, the government gives him this long period in which… They didn't demand the payment right away. They gave him a long period, interest-free, of $80. Did he go back and say, this is a hardship for me. Can you cut it down to $40 and extend it over… No, he did not do that. And… I would just say this, and then I'll reserve the rest of my time for that. Under the totality of the circumstances, I would suggest that what happened here is the equivalent to detrimental reliance if, in fact, he had relied on something that OPM had said… Well, that goes into the car, right? The detrimental reliance. I don't see any other argument in the record how he relied on this to his detriment other than the suggestion that he purchased the car that he might not have purchased. He chose to retire based upon his understanding. I don't see you raising a claim that he sort of should get his job back because he detrimentally relied on that and he wouldn't have otherwise retired. I don't see that. No, we can't raise that claim. Can you assert detrimental reliance against the government? Well, that again, if the action was that of OPM, it would be detrimental reliance. Because of the fact that it was by the Department of Labor information, I think that what we have is something that is the equivalent of detrimental reliance because he acted based upon that understanding. Detrimental reliance is an equitable doctrine, right? Yes. It's analogous to estoppel, right? Can you assert estoppel against the government? That gets to another point that I would make, Jeff, which is that if we think of the government employer as a single entity, then reliance upon someone in the Department of Labor is the same as reliance upon the OPM. MSPB said that if OPM was not responsible for the representation, then it doesn't matter that he relied on something that he was told by somebody else. And that gets me back to what I was saying about a government employee. For a government employee to understand that he has to distinguish between OPM making that determination and the department for which he's working, I think, is a stretch. And if, in fact, there were OPM, it's only OPM that could make the representation for which detrimental reliance would be available, then I would argue that what goes against equity and good conscience is that this is almost equivalent, other than the fact that it was the Department of Labor, which is the same government and the same employer. Well, why don't we save the rebuttal time and move it from the government now, Mr. Dintzer? Thank you, Your Honor. May it please the Court. The question here is whether the petitioner gets to keep the taxpayer money that was inadvertently sent to him and which he acknowledges that he didn't earn and is not entitled to. Well, that's one way of looking at it. Another way of looking at it is whether the government's entitled to demand repayment of the overpayment. Yes, Your Honor. And the way that the statute is— And I say that because I have a couple of questions for you. Yes, Your Honor. So Mr. Sheeler was notified that he had an estimate of about $340 approximate for his retirement, or at least that's the claim, that he was sent a letter. Just so that we're clear, Your Honor, he was sent a letter by his agency in August of 2009 that had that information, yes. Okay. And that's the letter that Mr. Schelecki claims he did not receive? As the record shows, although the administrative judge has it. So the government had figured his retirement had based an estimate of approximately $340 and notified him of that. If I could clarify that, Your Honor, the agency made an estimate, but OPM is the only part of the government that can actually do either the informal estimate and ultimately make that calculation. And the reason is, Your Honor, that people move around in the government. They change jobs. They work part-time, full-time. There's a lot of information that can go into this number. It's a complicated— I'm looking at the letter. It says Federal Retirement Benefits. Yes, Your Honor. So a government worker gets this letter— From the agency. From the agency. Yes, Your Honor. Or whomever, and reads Federal Retirement Benefits. This is my estimate of my benefits. Yes, Your Honor. $340. And he sent that letter to notify them of the approximation of his retirement. He sent that letter, Your Honor, by the agency to assist the worker in putting together the information so that the worker can understand what the retirement may look like. Ultimately, it's the worker's responsibility to put this information together and to figure this out, just as it is for any private worker. Mr. Schelecki says he did not receive the letter. He did get a check for $800. Yes, Your Honor. He got a check for $800 for 17 months. Yes, Your Honor, roughly. And one of your arguments is that he was notified from the very beginning that he could expect approximately $340. Yes, Your Honor. Okay. So obviously the government also had the estimate. I mean, one hand of the government says, I'm going to give you $340. The other hand gives him $800. And now this hand seems to be saying, I don't know anything about this. And we don't communicate. We don't talk. We do talk, Your Honor. But what happens is that the agency provides him the information that the agency has. Ultimately, this information will flow from that agency, and if somebody's moved around, from a number of agencies into OPM, who actually does the number crunching. And if the person works part-time, which is the case here, then that will have to sometimes be figured by hand. And it takes 18 months? In this case, it took approximately 16 months before he got the letter. I mean, there are elements along the way. It took 16 months for the government to figure out that they were overpaying him? Your Honor, he was being paid on an interim basis. So he understood that he was getting some money on an interim basis because that final number hadn't been figured. It couldn't be figured until certain dominoes fell, one of which was he had to have the election, which he made in October of 2010. And that's when he wrote the check for $672. He had to make that election. So once all the pieces are together, then OPM has their final number, which they came to in December of 2010. So that's standard practice? I mean, when you retire, you get an interim payment. And the interim payment, which I can't identify right here, I mean, it kind of acknowledges that we're still running the numbers. And so we might have to regroup it, or we might have to give you more at the conclusion. Yes, Your Honor, because the only alternative is you have somebody who retires and they just don't get anything until all the paperwork gets done. And no one wants to see the person have to basically go without the money until the paperwork gets done. So they get the money on an interim basis until all this information is gathered and processed. And then once a final number is created, either some is taken out to make up for the overpayment, or if it's an underpayment, then that's provided. And as Margaret pointed out, I mean, what's curious or unusual about this case is the extent of the difference. Is that related, if you know if it's in the record, to the fact that he was a part-time person? So were they just essentially doubling it because they hadn't factored in his part-time status? As my understanding is, Your Honor, that is the case, that that is something that has to be hand-computed, more or less. Because every time he works less than a full shift or a full amount, it has to go into see what percentage he's ultimately working over all this time. So OPM can come up with a number that's a percentage of what he would otherwise not. You're referring to the service history? Yes, Your Honor. And the letter that he was purported to have been sent with the estimate, has that service history in it? It has that, Your Honor. OPM, though, that is an estimate by the agency. OPM is the only agency within the United States that's authorized to actually make the payment. They actually have to do their own number crunching. So there could be some people who work part-time at one agency and part-time at another, and OPM would combine it? They'd have to figure out the total amount, basically the total percentage that this individual would be entitled to, differentiated from a full-time annuity. And so it can take time, and to make sure that the person is not prejudiced, they are given the interim payment. You didn't answer my question, though. I'm sorry, Your Honor. Could somebody be working part-time at one agency and at the same time be working part-time at another? Absolutely, Your Honor. And if they did, as I understand it, and if they did, then that could make up for a full-time, and OPM would take that into consideration as well. So what we have here is the petitioner is making a detrimental reliance argument with respect to leaving his job and buying a car, and then an unconscionability argument with respect to the 16-month delay. And neither of those... That, and he's also arguing that the amount of the overpayment was by half. Yes, Your Honor. You're giving somebody who's entitled to $340, you're giving them a check for over $800 for over 17 months. And, Your Honor, there's a third basis that he could have asserted, which was financial hardship, and he didn't. If he had, then the question would be, okay, if we're, I mean, wow, it's a lot of money. If we go in and bring it back, are we going to put this person in a bad financial position? He chose not to assert that, and so that question, the, oh, it's a lot of money, could come into effect on that portion, but it... That's one way of looking at it. The other way of looking at it is that the estimate, the overpayment was so large. Well, the... to adjust the annuity, and then also the length of the delay of 17 months, and then finally the amount that we're talking about. You're talking about over 100% overpayment. Your Honor, if I could go through those in order, in reverse order, the administrative judge found that there was no gross negligence on the part of OPM. That's the joint appendix at 13. The amount was, it was simply what he would have gotten if he had been a full-time worker. There was no accidental multiplier. It was, they just hadn't had a chance to compute that. The length of time was 17 months. To put it in context, in the Spinella case that the MSPB considered, that was 79 months, and the court found, and the board found that that was not unconscionable. Well, it also swung, the 17 months swung on month 16, finally getting the information necessary to compute the amount, isn't that right? Yes, Your Honor. I mean, they couldn't have finalized it until he wrote a check, until the petitioner wrote a check and chose one of the two options. So there was a process that was continuing. It wasn't just they were sending it to him, and all of a sudden they had an aha moment. They finalized it, and then they went back, and immediately after they finalized it, they told him that he needed to… Is this typical? Does it take this long for the OPM to finalize retirement pay? There can be a delay if somebody, it really depends in part on how complicated somebody's record is. If you've worked for a number of different places, each of them has to send it in, and especially if you've worked part-time and it has to be more or less hand-computed, that can extend it. Does this case fall into that? I mean, did he have multiple jobs and changing from one agency to another? What I've been told is that the average amount of days is 140. That's the average. So it can deviate from that based on the complexity of the record. So this is, what, four months? A little over four months. And that's average, and this is 17 months. It is, Your Honor. That's not an excessive delay? It was not found to be by the administrative judge, and, Your Honor, we don't believe it is because the question of unconscionability is a look at all the circumstances and whether it would be unconscionable under the circumstances, just wrong, to ask the person to provide back the money that they weren't entitled to. And so if it had created a situation where it would do real damage to the petitioner, then, I mean, he had a chance to assert that, but none of that is in the record. It's just that, oh, this happened to go on for a number of months. And so, no, Your Honor, under just – and what the board found in Spinella was just a length of time. That alone is not enough to show unconscionability. He did assert something. He asserted that he bought a car, and that's the only thing that he asserted. Yes, Your Honor, and that goes – there's three different theories that a person can assert. They can do financial hardship. They can do unconscionability, and they can do detrimental reliance, which is a separate part. He did say he bought a car. Under what the board has held and under what the OPM's guidelines are, you have to show that something is irrevocable before it can be detrimental reliance. The petitioner himself said he bought the car for $10,000. He estimated the resale value at $9,000. Certainly, that's not irrevocable, and, in fact, in the guidelines, in the OPM guidelines, they anticipate something just like this at $60,000 where they say if something he's bought that can be returned or can be sold or whatever, then that doesn't qualify as – for detrimental reliance. He still has the car, and moreover, the board found that he did not show that he would not have bought the car in the but-for world. In fact, what the AJ found, quote, simply put, the appellant did not change his position on the – and he says retire, but this includes everything – that OPM did or communicated to him. He didn't prove it, and so, I mean, he had a chance to provide that evidence, but he didn't. Did OPM notify the appellant that he had the option to buy up – to pay money to raise the amount of his annuity? The OPM annuity election letter, which is at the Supplemental Appendix 22, is dated October 6, 2010. I would be surprised if there wasn't something in all the other papers that he might have seen something before, but that's what the record has is the date. And so – and finally, I believe Your Honor asked about the standard of review. The standard of review, OPM has discretion here, and that – in fact, the statute says in no uncertain terms, recovery of payments, dot, dot, dot, may be made from an individual when in the judgment of the OPM, and then it goes on. So, there's discretion by OPM. Then to – substantial evidence is required in front of the Board by the – if the burden is on the petitioner, they have to provide substantial evidence, and of course, here we're under an arbitrary and capricious stand. So, unless the Court has any other questions? For these reasons, the Court should affirm the Board's conclusion that OPM acted within its discretion in rejecting the waiver request. Thank you. Thank you. A couple of minutes left. Just very briefly. First of all, as to financial hardship, the fact is that Mr. Schlaese had some resources, and he – and to assert that he absolutely could not afford this at the time would have been untrue. But on the other hand, he did choose to retire and told – and said that he did it on his understanding that he was going to get something in the neighborhood of $800 per month, which is what he said he needed to retire. In fact, he's had to take out a reverse mortgage on his home since then. But he's not destitute. He's not without any resources, which I think is what the requirements are for financial hardship that we could have asserted. In the end, the – two things. The administrative judge in his ruling said we don't have to look at those issues because it's nothing that OPM did. And that gets back to the essence of my argument. For a government employee to make the distinction between what OPM does and what he's told – and I would suggest that OPM seemed to have the same information as what Mr. Schlaese was told because they started paying him $859 per month. And they – but OPM also had the estimate, and the record is that Mr. Schlaese never received that. There's nothing in the evidence in the record to indicate that he did. So what OPM failed to do was make a correction that would have enabled Mr. Schlaese to perhaps change his mind within time where he could have said that his retirement was involuntary and asked for more time so he could actually have maintained himself as he intended to. So in the end, again, the totality of the circumstances, as Judge Rayner pointed out, if we look at all of the things, OPM knew. OPM knew right away that he was a part-time worker even if they didn't have an exact amount of money that he was making. Mr. Schlaese did not know. OPM paid him for 17 months. OPM – Mr. Schlaese took that money in good faith. And is not now able to get back to work, so has to live with that. All we are asking is that he not have to reimburse money he accepted in good faith for the overpayment from the government. At least we would ask that this be remanded for – to make a more complete record. Thank you.